**Richard KOSLEY, Plaintiff-Appellee,**

v.

**GOLDBLATT BROS., Inc., an Illinois corporation, Defendant-Appellant.**

**No. 12108.**

United States Court of Appeals
Seventh Circuit.

Jan. 28, 1958.

Rehearing Denied Feb. 20, 1958.

Charles Levin, Hammond, Ind., Robert A. Sprecher, Stanford Clinton, Chicago, Ill., for appellant.

George Kohl, Hammond, Ind., J. Walter Nowicki, Edward J. Raskosky, Hammond, Ind., for appellee.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This is an appeal by defendant from a restraining order entered by the district court in a diversity suit brought by plaintiff, a citizen of Indiana, against defendant, an Illinois corporation authorized to do business in Indiana.

The complaint, filed September 15, 1956, in addition to showing diversity of citizenship, alleges that the amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000. It sets forth a cause of action for a balance due on account of wages earned by plaintiff while employed as an operating engineer by defendant in its Hammond, Indiana, retail department store in the period from July 1, 1947 to October 29, 1955, as well as a penalty alleged to have accrued against defendant by virtue of its refusal to pay said wages on demand, pursuant to Indiana law. A claim for reasonable attorneys' fees is also contained in the complaint.

Defendant's answer to the complaint, filed October 9, 1956, consists of admissions and also categorical denials that plaintiff was employed by it as alleged, that it agreed to pay an hourly rate at one and one-half times the regular rate for hours worked in excess of 40 hours per week, as alleged, that defendant is indebted as charged, that plaintiff demanded payment, that the wages claimed are wholly due and unpaid, that the statutory penalty accrued and that it was necessary for plaintiff to employ an attorney to collect said wages. The answer affirmatively sets up a defense of payment and also that, if plaintiff did perform the services in excess of 48 (*sic*) hours per week, he did so voluntarily and against the direction of defendant's management. The answer also pleaded the bar of the statute of limitations.

On May 24, 1957, plaintiff filed a petition which, *inter alia*, stated that the

wages for which he had sued were "due by various contracts" between the International Union of Operating Engineers, Local 846 and defendant, of which union plaintiff was a member, and that defendant had notified plaintiff's attorney that it had resorted to the arbitration proceeding authorized by "a contract entered into by the International Union of Operating Engineers, Local 846, and Goldblatt Bros., Inc." Plaintiff prayed that defendant be restrained from any further proceedings in said arbitration. The district court received evidence, both oral and written, at a hearing on said petition. It entered such a restraining order and this appeal followed. Among other things, it appeared from the evidence that plaintiff was discharged November 1, 1955. As plaintiff's exhibits, the court received in evidence a series of agreements between defendant, as employer, and Local 846, covering the relevant period of time.

The agreement, in effect from July 25, 1955 and extending to July 24, 1958, *inter alia*, establishes the union as the collective bargaining agency for all employees of the company engaged in the operating of all boilers, engines, etc., fixes the hourly wages of operating engineers, a regular work day of 8 hours and a work week of 40 hours, and provides that overtime shall be paid at an hourly rate of time and one-half. It also makes provision for time to eat and for vacations and holidays, and specifies the duties to be performed by the engineers. Specifically, it provides:

"Article I.
"That they shall keep the machinery under their charge in good running order and do all temporary repairs."

Article VIII provides:

"During the term of this agreement there shall be no strikes, lockouts, stoppages or the use of any form of economic coercion by either of the parties hereto."

Article IX provides:
"It is further mutually agreed by and between said parties:

"1. That during the life of this agreement there shall be no further demands made upon either party.

"2. That any dispute, controversy or question arising under this agreement which cannot be settled by discussion and negotiation between the parties shall be submitted to arbitration. Each party hereto shall select one arbitrator and the two shall select a third. * * * " 1

In this court, defendant argues (1) that the Supreme Court of the United States [Association of Westinghouse Salaried Employees v. Westinghouse, 348 U.S. 437, 75 S.Ct. 489], has held:

" * * * that Section 301 of the Labor Management Relations Act of 1947 [29 U.S.C.A. § 185] expresses a federal policy in favor of the enforcement of agreements to arbitrate grievance disputes such as the one involved in the present case. Section 3 of the United States Arbitration Act [9 U.S.C.A. § 3] requires that federal courts stay judicial proceedings until arbitration proceedings are completed. In view of this overwhelming expression of congressional policy in favor of arbitration, the federal district court clearly erred in restraining arbitration proceedings in the present case."

It also argues (2) that ordinary principles

" * * * of contract law applicable in the State of Indiana hold that the arbitration provision in a contract is binding upon parties thereto because it constitutes consideration for the wage and hour and other provisions in the same contract, that a party may not rely on parts of a contract and ignore other parts of the same contract, and that the arbitration agreement is a

---

1. Earlier agreements in the series contained provisions that the engineers were to make necessary repairs in maintaining their equipment. Common to all contracts was an arbitration clause similar to that contained in the 1955 agreement.

condition precedent to suing upon the contract and until the arbitration remedies provided in the contract are exhausted no judicial proceeding will lie."

Plaintiff disclaims any intention of basing his suit on section 301. He relies upon the allegations of his complaint showing diversity of citizenship and the statutory amount of damages sought.

■■ Furthermore he contends that the provision for arbitration in the contract between the union and defendant does "not cover a claim by an individual employee for past due wages." We agree with this contention. An employee has always had a right to bring suit in a court to recover wages claimed to be owing him from his employer. As the court said in Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 460, 75 S.Ct. 489, 500, 99 L.Ed. 510: "The employees have always been able to enforce their individual rights in the state courts." Such an action is based upon a hiring contract between the employer and the employee. While the contract between the employees' union and the employer may determine the rate of wages of the employee, the latter's right of action is not superseded by the employer-union agreement. An employee may enforce his claim for back wages by suing in a state court, or in a federal court where there is present diversity of citizenship and the required amount is involved.

Moreover, while we recognize that the arbitration provisions here in question must be given effect in a proper case, we emphasize that the subject matter of such a proceeding is clearly defined by the contract itself, and, as so defined, it does not include an individual claim of an employee for wages due. The arbitration machinery is to operate on any dispute, controversy or question arising under the agreement, which cannot be settled by discussion and negotiation between the parties. This provision follows an undertaking by the parties that there shall be no strikes, lockouts, stoppages, or the use of any form of economic coercion by either party. Arbitration as here envisioned is a method of settling, without court action, matters pertaining to working conditions, wage rate schedules, the right to vacations, etc., which were it not for the discussions, negotiations and arbitrations provided by the contract, would very likely result in economic coercion by either party.[2] Unlike such disagreements, which if not resolved in the manner set forth in the contract, would probably affect the entire business of the employer and the work of many or all employees, a single employee's individual claim for wages earned by him is a matter for his individual concern which historically he has a right to submit to a court of law for adjudication upon the evidence submitted in an orderly judicial trial. The dispute, controversy or question which defendant wishes to settle by arbitration is that reflected in the complaint of the plaintiff and the answer of the defendant. Such is the action which plaintiff properly brought in the district court. It was the court's traditional jurisdiction over such a case that it was protecting by its restraining order. Such defenses as the bar of the statute of limitations which can be adequately considered only by a tribunal versed in the law were never intended by the parties to the contract to be decided by arbitration.

Accordingly we affirm the district court's order.

Order affirmed.

2. In some of the agreements between the union and the employer, appears a provision, known as section 9, giving the employer the right to discharge an employee for just cause, which is defined as dishonesty, drunkenness, absenteeism, insubordination, theft and inefficiency. While it appears from the evidence that plaintiff was discharged, no question is raised by the complaint or answer in regard to whether the discharge was justified. However, if the right to discharge plaintiff were contested by him, that might be an example of where arbitration would be available. Such a situation is basically different from the enforcement of his claim for wages due him from his employer.